**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**(PHILADELPHIA)**

| | | |
|---|---|---|
| IN RE: | ) | |
| **ROBERT CAMPBELL AND** | ) | **CASE NO.: 2:22-bk-10594-elf** |
| **EMILY CAMPBELL** | ) | **CHAPTER 13** |
| | ) | **JUDGE ERIC L. FRANK** |
| **DEBTORS** | ) | |
| | ) | |
| **US BANK TRUST NATIONAL ASSOCIATION,** | ) | |
| **NOT IN ITS INDIVIDUAL CAPACITY BUT** | ) | |
| **SOLELY AS OWNER TRUSTEE FOR VRMTG** | ) | |
| **ASSET TRUST** | ) | |
| | ) | |
| **MOVANT** | ) | |
| | ) | |
| **ROBERT CAMPBELL AND EMILY** | ) | |
| **CAMPBELL, DEBTORS AND** | ) | |
| **KENNETH E. WEST, TRUSTEE** | ) | |
| | ) | |
| **RESPONDENTS** | ) | |

**MOTION OF US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET
TRUST FOR RELIEF FROM AUTOMATIC STAY UNDER SECTION 362**

1. Movant is US Bank Trust National Association, Not In Its Individual Capacity But
   Solely As Owner Trustee For VRMTG Asset Trust.

2. Debtors are the owners of the premises 853 Hilton Avenue, Feasterville, PA 19053-
   3508 (hereinafter the "Property").

3. Movant is the holder of a mortgage, original principal amount of $155,000.00 on the
   Property that was executed on September 21, 2005. Said mortgage was recorded on
   November 10, 2005.  Documentation provided is in support of right to seek a lift of
   stay and foreclose if necessary.

4. Kenneth E. West is the Trustee appointed by the Court.

5.  As of November 8, 2022, Debtors have failed to make the monthly payments in the amount of $1,192.77 for the months of September 1, 2022 through November 1, 2022 for a total of $3,578.31 with $79.57 in suspense for a total arrearage of $3,498.74.

6.  In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant will also incur $1,050.00 in legal fees and $188.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

7.  The total amount necessary to reinstate the loan as of November 8, 2022, is $47,159.82 (plus attorney's fees & costs).

8.  As of November 8, 2022, the principal balance owed is $185,291.17.

9.  Pursuant to Debtors' Plan, payments are to be made directly to Movant by Debtor.

10. Movant is entitled to relief from stay for cause.

11. Movant further seeks relief to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. Movant may contact Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be non-recourse unless included in a reaffirmation agreement.

12. This motion and the averments contained therein do not constitute a waiver by Movant of its right to seek reimbursement of any amounts not included in this motion, including fees and costs, due under the terms of the mortgage and applicable law.

WHEREFORE, Movant prays that an Order be entered modifying the Stay and permitting Movant to proceed with its mortgage foreclosure on the mortgaged premises, and to allow the Sheriff's Grantee to take any legal action to enforce its right to possession of the mortgage premises. Further, Movant prays that an Order be entered awarding Movant the costs of this suit, reasonable attorney's fees in accordance with the mortgage document and current law together with interest.

Respectfully submitted,

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq.
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
josh.goldman@padgettlawgroup.com
*Counsel for Creditor*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy has been furnished to the parties on the attached Service List by electronic notice and/or by First Class U.S. Mail on this the 16th day of November 2022:

Respectfully submitted,

/s/ Joshua I. Goldman
Joshua I. Goldman, Esq.
Pennsylvania Bar # 205047
PADGETT LAW GROUP
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
josh.goldman@padgettlawgroup.com
*Counsel for Creditor*

## SERVICE LIST (CASE NO. 2:22-bk-10594-elf)

*DEBTORS*
ROBERT CAMPBELL
EMILY CAMPBELL
853 HILTON AVE
FEASTERVILLE TREVOSE, PA 19053

*ATTORNEYS FOR DEBTOR*
BRAD J. SADEK
SADEK AND COOPER
1500 JFK BOULEVARD, STE 220
PHILADELPHIA, PA 19102
BRAD@SADEKLAW.COM

*TRUSTEE*
KENNETH E. WEST
OFFICE OF THE CHAPTER 13 STANDING TRUSTEE
1234 MARKET STREET - SUITE 1813
PHILADELPHIA, PA 19107
ECFEMAILS@PH13TRUSTEE.COM

*U.S. TRUSTEE*
OFFICE OF UNITED STATES TRUSTEE
ROBERT N.C. NIX FEDERAL BUILDING
900 MARKET STREET, SUITE 320
PHILADELPHIA, PA 19107
USTPREGION03.PH.ECF@USDOJ.GOV

# NOTE

| September 21, 2005 | Costa Mesa | , | California |
|---|---|---|---|
| [Date] | [City] | | [State] |

**853 Hilton Avenue, Feasterville, PA   19053-3508**

[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **155,000.00**            (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **GMAC Mortgage Corporation DBA ditech.com**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **6.500**              %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the First          day of each month beginning on **November 1**                  ,
**2005**          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on October 1              ,2035          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at **P.O. Box 27834, Newark, NJ 07101-7834**
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **979.71**

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000**               % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____   (Seal)
Robert W. Campbell                          -Borrower

_____   (Seal)
Emily P. Campbell                           -Borrower

PAY TO THE ORDER OF
GMAC Bank
WITHOUT RECOURSE

_____   (Seal)
                                            -Borrower

Michael Hebling
Limited Signing Officer
Acting Agent for
GMAC MORTGAGE CORPORATION
DBA DITECH.COM _____   (Seal)
                                            -Borrower

Pay to the Order of
GMAC Mortgage Corporation
Without Recourse

PAY TO THE ORDER OF

WITHOUT RECOURSE

Joanne Wight, Vice President
Acting Agent for GMAC Bank

J. Chiodo
Limited Signing Officer
Acting Agent for
GMAC MORTGAGE CORPORATION

LASER PRO. Reg. U.S. Pat. & T.M.Off., Version 0.0.5.2 (c) 2005 Concentrex Incorporated, All Rights Reserved.

### BUCKS COUNTY RECORDER OF DEEDS
**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

**Instrument Number - 2005147901**
**Recorded On 11/10/2005 At 10 07·07 AM**          **\* Total Pages - 18**
**\* Instrument Type - MORTGAGE - CORPORATIONS**
**Invoice Number - 98649**          **User -  KLJ**
**\* Mortgagor - CAMPBELL, ROBERT W**
**\* Mortgagee - G M A C MTG CORP**
**\* Customer - HOME CONNECTS**
**\* FEES**

| | |
|---|---|
| RECORDING FEES | $72.50 |
| TOTAL | $72.50 |

<div style="border:1px solid black">

## This is a certification page

# DO NOT DETACH

### This page is now part
### of this legal document.

</div>

**RETURN DOCUMENT TO·**
HOME CONNECTS

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania

  

Edward R  Gudknecht
Recorder of Deeds

**\* - Information denoted by an asterisk may change during**
**the verification process and may not be reflected on this page**

**Book 4706 Page 1275**

Prepared By
Sylvia Park-Lew

3200 Park Center Dr  Suite 150,
Costa Mesa, CA  92626
(800) 700-9261

When recorded mail to
Home Connects
100 Lakeside Drive  Suite 100  Horsham  PA  19044

(800) 700-9261
Parcel Number

Premises 853 Hilton Avenue
Feasterville, PA 19053-3508

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

**(A) "Security Instrument"** means this document, which is dated 09/21/2005
together with all Riders to this document

**(B) "Borrower"** is Robert W  Campbell and Emily P  Campbell, Married

Borrower is the mortgagor under this Security Instrument

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  **MERS is the mortgagee under this Security Instrument**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint MI 48501-2026, tel  (888) 679-MERS

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3039  1/01

VMP-6A(PA) (0502)
Page 1 of 16                Initials
VMP Mortgage Solutions Inc  (800)521 7291

**(D) "Lender"** is GMAC Mortgage Corporation DBA ditech com

Lender is a Residential Mortgage Lender
organized and existing under the laws of Commonwealth of Pennsylvania
Lender's address is 3200 Park Center Dr  Suite 150, Costa Mesa, CA  92626

**(E) "Note"** means the promissory note signed by Borrower and dated 09/21/2005
The Note states that Borrower owes Lender One Hundred Fifty Five Thousand
Dollars
(U S $ 155,000 00       ) plus interest  Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than October 1, 2035
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property "
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower  The following
Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers
**(L) "Escrow Items"** means those items that are described in Section 3
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i)
damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the
Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument

Initials  _SPC RWC_

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County       [Type of Recording Jurisdiction]
of Bucks                                                                [Name of Recording Jurisdiction]
The Assessor's Parcel Number (Property Tax ID#) for the Real Property is
▮▮▮▮▮▮▮ See Attached

which currently has the address of  853 Hilton Avenue
                                                                              [Street]
Feasterville                              [City], Pennsylvania  19053-3508  [Zip Code]
("Property Address")

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

Initials: _____

VMP®-6A(PA) (0502)                    Page 3 of 16                              Form 3039   1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2  Application of Payments or Proceeds** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment



Initials _____

can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

3  Funds for Escrow Items  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items "  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest



Initials _EPC RNC_

Form 3039  1/01

shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4  Charges, Liens**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5  Property Insurance**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower



Initials

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due



**6 Occupancy** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property, Inspections** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8 Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9



Initials _____

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10 Mortgage Insurance** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund**



Initials *EAC RWC*

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination

11 Assignment of Miscellaneous Proceeds, Forfeiture All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be



Initials

Form 3039   1/01

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12 Borrower Not Released, Forbearance By Lender Not a Waiver** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13 Joint and Several Liability, Co-signers, Successors and Assigns Bound** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14 Loan Charges** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15 Notices** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to

have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law, Severability, Rules of Construction** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17 Borrower's Copy** Borrower shall be given one copy of the Note and of this Security Instrument

**18 Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or



agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20  Sale of Note, Change of Loan Servicer, Notice of Grievance**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21  Hazardous Substances.** As used in this Section 21  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

**22 Acceleration, Remedies** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise) Lender shall notify Borrower of, among other things (a) the default, (b) the action required to cure the default, (c) when the default must be cured, and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law**

**23. Release** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void After such occurrence, Lender shall discharge and satisfy this Security Instrument Borrower shall pay any recordation costs Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law

**24 Waivers** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption

**25 Reinstatement Period** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument

**26. Purchase Money Mortgage** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage

**27 Interest Rate After Judgment** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____

_____ (Seal)
Robert W  Campbell                              -Borrower

_____

_____ (Seal)
Emily P  Campbell                               -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                  -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                  -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                  -Borrower



-6A(PA) (0502)                    Page 15 of 16                    Form 3039  1/01

COMMONWEALTH OF PENNSYLVANIA,  *Bucks*                    County ss

On this, the  *31st*  day of  *September,  2005*          , before me, the
undersigned officer, personally appeared

*Robert W Campbell and Emily P Campbell*

~~known to me~~ (or
satisfactorily proven) to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and
acknowledged that ~~he/she~~/they executed the same for the purposes herein contained

IN WITNESS WHEREOF, I hereunto set my hand and official seal
My Commission Expires  *07-09-07*

---

NOTARIAL SEAL
JOY N MORGAN
Notary Public
WRIGHTSTOWN TOWNSHIP
BUCKS COUNTY
My Commission Expires Jul 9 2007

*Joy N Morgan*

*Notary Public*
Title of Officer

---

Certificate of Residence
I, Sylvia Park-Lew                              , do hereby certify that
the correct address of the within-named Mortgagee is P O Box 2026, Flint, MI 48501-2026

Witness my hand this  21          day of September, 2005

Agent of Mortgagee

---

**6A(PA)** (0502)                    Page 16 of 16        Initials        Form 3039  1/01

‹ ORDER # █████████

# EXHIBIT A

ALL THAT PARCEL OF LAND IN THE TOWNSHIP OF LOWER SOUTHAMPTON, BUCKS
COUNTY, COMMONWEALTH OF PENNSYLVANIA, AS MORE FULLY DESCRIBED IN DEED
BOOK 3455, PAGE 2387, ID#█████████ BEING KNOWN AND DESIGNATED AS A  METES AND
BOUNDS PROPERTY

DEED FROM GARY BAUMEISTER AND LISA BAUMEISTER, MARRIED AS SET FORTH IN DEED
BOOK 3455, PAGE 2387 DATED 05/23/2003 AND RECORDED 07/21/2003, BUCKS COUNTY
RECORDS, COMMONWEALTH OF PENNSYLVANIA

Investor Account # ███████

When Recorded, Return to:
Ditech Financial LLC
2100 East Elliot Road, Building 94 T214
Tempe, AZ 85284

This document was prepared by Ditech Financial LLC

_____ [Space above This Line for Recording Data] _____

Customer(s)[1]: ROBERT CAMPBELL and EMILY CAMPBELL
Lender/Servicer ("Lender"): Ditech Financial LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 09/21/2005
Account Number: ███████████
MIN: ███████████
Property Address ("Property"): 853 HILTON AVE, FEASTERVILLE, PA 19053

**IF YOU ARE IN BANKRUPTCY OR IF YOUR OBLIGATION TO REPAY THIS ACCOUNT WAS
DISCHARGED IN BANKRUPTCY, THIS NOTICE IS INFORMATIONAL ONLY. IT IS NOT AN ATTEMPT TO
COLLECT THE DEBT. YOU MAY DISREGARD INFORMATION PERTAINING TO PAYMENT REMITTANCE.
YOU ARE NOT OBLIGATED TO MAKE PAYMENTS AND ANY AMOUNT(S) YOU DO PAY DITECH IS AT
YOUR DISCRETION.**

## MODIFICATION AGREEMENT

This Modification Agreement ("Agreement"), made this 18th day of October, 2018, between the Lender and Customer,
amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment
Rewards Rider, if any, dated 03/12/2018 and recorded in Book or Liber -, at page(s) -, and/or Document
#2018012613 of the  ROBIN M ROBINSON  Records of  THE BUCKS COUNTY
                    (Name of Records)             (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal
property described in the Security Instrument and defined therein as the "Property", located at
853 HILTON AVE, FEASTERVILLE, PA 19053
(Property Address)

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows
(notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    As of 11/01/2018, the amount payable under the Note and the Security Instrument (the "New Principal Balance")
is U.S. $219,070.27 consisting of the unpaid amount(s) loaned to Customer by Lender plus any interest and
other amounts capitalized.

---

**PBK**

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

Form 3179 1/01 (rev. 09/16)
LTR-442

2018101818.2.0.1989-J20150825Y

2.  $32,070.27 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Customer will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $187,000.00. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.500%, from 11/01/2018. Customer promises to make monthly payments of principal and interest of U.S. $840.68, beginning on the 12/01/2018, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 4.500% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new monthly payment amount does not include any amounts owed for escrow. Customer may refer to the monthly billing statement for the escrow amount owed. The new Maturity Date will be 11/01/2058. Customer's payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1 - 40 | 4.500% | 11/01/2018 | $840.68 | $363.85, may adjust periodically | $1,204.53, may adjust periodically | 12/01/2018 | 480 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

3.  Customer agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Customer sells or transfers an interest in the Property, (ii) the date Customer pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.  If Customer makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Customer is not a natural person and a beneficial interest in Customer is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Customer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Customer must pay all sums secured by the Security Instrument. If Customer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Customer.

    Customer understands and agrees that:

    (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

2018101818.2.0.1989-J20150825Y

Form 3179 1/01 (rev. 09/16)
LTR-442

or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Customer acknowledges that Lender may be required to report to the Internal Revenue Service any debt forgiveness of $600 or more in principal, subject to certain exceptions that may or may not apply to Customer. If required, such reporting may result in consequences regarding Customer's federal, state or local tax liability. In addition, if Customer receives public assistance, the forgiveness of debt may affect Customer's eligibility for these benefits. Ditech cannot provide any advice or guidance regarding possible tax consequences or effect on any public assistance benefits. Customer may wish to consult with a tax professional about any possible tax consequences and/or Customer's public assistance office regarding other consequences that may result from the forgiveness of debt.

(f)     Customer agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Customer.

6.     By this paragraph, lender is notifying customer that any prior waiver by lender of customer's obligation to pay to lender funds for any or all escrow items is hereby revoked, and customer has been advised of amount needed to fund the escrow items.

Customer will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Customer shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Customer shall pay Lender the Funds for Escrow Items unless Lender waives Customer's obligation to pay the Funds for any or all Escrow Items. Lender may waive Customer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Customer shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Customer's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If Customer is obligated to pay Escrow Items directly, pursuant to a waiver, and Customer fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and Customer shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Account Documents, and, upon such revocation, Customer shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Customer for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Customer interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Customer any interest or earnings on the Funds. Lender and Customer can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Customer, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to Customer any Funds held by Lender.

7.  Notwithstanding anything to the contrary contained in this Agreement, Customer and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Customer prior to the execution of this Agreement and that Lender may not pursue Customer for personal liability. However, Customer acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Customer's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Customer personally or an attempt to revive personal liability.

8.  Customer also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Customer's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Customer is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Customer waives any Timely Payment Rewards rate reduction to which Customer may have otherwise been entitled; and

(b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or


LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

2018101818.2.0.1989-J20150825Y

Form 3179 1/01 (rev. 09/16)
LTR-442

is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

9.    Customer understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Customer agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. Customer understands that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If Customer elects not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Customer will not be eligible for a modification.

In Witness Whereof, the Lender and I have executed this Agreement.

Ditech Financial LLC
_____
Lender

By: _____

Judith Anne Abbee
Licensed Loan Mitigation Specialist

NOV 0 6 2018
_____
Date

_____ (Seal)
Customer

_10-30-18_____
Date

_____ (Seal)
Customer

_10/30/18_____
Date

[Space Below This Line For Acknowledgments]

_____

## *BUCKS COUNTY RECORDER OF DEEDS*

**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

Instrument Number - 2012056780
Recorded On 7/12/2012 At 12:52:28 PM          * Total Pages - 4
* Instrument Type - MORTGAGE ASSIGNMENT
   Invoice Number - 519322          User -  KLJ
* Mortgagor - M E R S INC
* Mortgagee - G M A C MTG L L C
* Customer - INDECOMM GLOBAL SERVICES
* <u>FEES</u>

```
RECORDING FEES        $54.00
TOTAL PAID            $54.00
```

```
┌─────────────────────────────────────────┐
│        Bucks County UPI Certification     │
│          On July 12, 2012 By JQ           │
└─────────────────────────────────────────┘
```

```
┌─────────────────────────────┐
│  This is a certification page │
│                               │
│      DO NOT DETACH            │
│                               │
│     This page is now part     │
│    of this legal document.    │
└─────────────────────────────┘
```

RETURN DOCUMENT TO:
INDECOMM GLOBAL SERVICES
2925 COUNTRY DRIVE
LITTLE CANADA, MN 55117

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
   the verification process and may not be reflected on this page.

Inst. # 2012056780 - Page 2 of 4

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
21-032-038-         -         L SOUTHAMP TWP
      CERTIFIED 07/12/2012 BY JQ
```

This Instrument Prepared By:
Name: Indecomm Global Services
Address: 2925 Country Drive
　　　St. Paul, MN 55117
Telephone #: 1-888-679-6377

Recording Requested By &
When Recorded Return To:
　　Indecomm Global Services
　　2925 Country Drive
　　St. Paul, MN 55117

CPN # ▮▮▮▮▮▮▮

# Assignment of Mortgage

Document Title

Prepared By:

Return To:

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN  55117

CPN:           █████████

█████████       **ASSIGNMENT OF MORTGAGE**

KNOW ALL MEN BY THESE PRESENTS that **Mortgage Electronic Registration Systems, Inc.** hereinafter **Assignor** , for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by **GMAC MORTGAGE, LLC, "Assignee,"** the receipt whereof is acknowledged, has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by **ROBERT W. CAMPBELL** and **EMILY P. CAMPBELL** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS A NOMINEE FOR GMAC MORTGAGE CORPORATION DBA DITECH.COM, ITS SUCCESSORS AND ASSIGNS,** bearing the date 09/21/2005, in the amount of $155,000.00, said Mortgage being recorded on 11/10/2005 in the County of **BUCKS**, Commonwealth of Pennsylvania, in Book 4706, Page 1275.

Being Known as Premises: **853 HILTON AVENUE, FEASTERVILLE, PA 19053**
Parcel No:

Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit;

IN WITNESS WHEREOF, the said **Assignor** has caused this document to be duly executed this 3rd day of July , 20 12

Mortgage Electronic Registration Systems, Inc.

By: *Paul Dickinson*     7/3/12
Name: **Paul Dickinson**
Title: **Vice President**

State of **Pennsylvania**
County of **Montgomery**

*[notary seal: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, CORPORATE SEAL 1999, DELAWARE]*

**Paul Dickinson**      On this 3 day of July , 20 12 before me, the subscriber, personally appeared _____, who acknowledged him/herself to be the **Vice President** of Mortgage Electronic Registration Systems, Inc., and that he/she, as such **Vice President** _____, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Stamp/Seal:

*Lisa Howlin Thomas*
Notary Public
Lisa Howlin Thomas

The precise address of the within named Assignee is:
**1100 VIRGINIA DRIVE, P.O. BOX 8300 FORT WASHINGTON, PA 19034**
By: _____
(For Assignee By Counsel)
*Pa Her*

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN  55117

Document Execution
PHS #█████████

NOTARIAL SEAL
LISA HOWLIN THOMAS
Notary Public
CHELTENHAM TWP., MONTGOMERY COUNTY
My Commission Expires May 8, 2016

Inst. # 2012056780 - Page 4 of 4

## Legal Description
## Exhibit A

ALL THAT PARCEL OF LAND IN THE TOWNSHIP OF LOWER SOUTHAMPTON, BUCKS COUNTY, COMMONWEALTH OF PENNSYLVANIA, AS MORE FULLY DESCRIBED IN DEED BOOK 3455, PAGE 2387, ID# ████████ BEING KNOWN AND DESIGNATED AS A METES AND BOUNDS PROPERTY .

DEED FROM GARY BAUMEISTER AND LISA BAUMEISTER, MARRIED AS SET FORTH IN DEED BOOK 3455, PAGE 2387 DATED 05/23/2003 AND RECORDED 07/21/2003, BUCKS COUNTY RECORDS, COMMONWEALTH OF PENNSYLVANIA



Inst. # 2013034813 - Page 1 of 4

## BUCKS COUNTY RECORDER OF DEEDS
**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

**Instrument Number - 2013034813**
**Recorded On 4/26/2013 At 9:49:09 AM**            * Total Pages - 4
* Instrument Type - MORTGAGE ASSIGNMENT
**Invoice Number - 586320**            User - TLF
* Mortgagor - G M A C MTG L L C
* Mortgagee - OCWEN LOANS SERV L P
* Customer - INDECOMM GLOBAL SERVICES
* FEES

```
RECORDING FEES          $54.00
TOTAL PAID              $54.00
```

| Bucks County UPI Certification |
|---|
| On April 26, 2013 By SEC |

**This is a certification page**

# DO NOT DETACH

**This page is now part**
**of this legal document.**

**RETURN DOCUMENT TO:**
**INDECOMM GLOBAL SERVICES**
**2925 COUNTRY DRIVE**
**LITTLE CANADA, MN 55117**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

Joseph J. Szafran, Jr.
Recorder of Deeds

* - **Information denoted by an asterisk may change during**
**the verification process and may not be reflected on this page.**

This Instrument Prepared By:
Name: Phelan Hallinan, LLP
Address: 1617 JFK Boulevard, Suite 1400
        Philadelphia, PA 19103
Telephone #:

Recording Requested By &
When Recorded Return To:
    Indecomm Global Services
    2925 Country Drive
    St. Paul, MN 55117

CPN #: █████████

## Assignment of Mortgage

Document Title

Prepared By   ,      Phelan Hallman, LLP
                      1617 JFK Boulevard, Suite 1400
                      Philadelphia, PA 19103

~~Return To~~      Phelan Hallman, LLP
                   1617 JFK Boulevard, Suite 1400
                   Philadelphia, PA 19103
                   ryan.galvin@phelanhallman.com

| CERTIFIED PROPERTY IDENTIFICATION NUMBERS |
| --- |
| 21-032-038-        -         L SOUTHAMP TWP |
| CERTIFIED 04/26/2013 BY SEC |

CPN.      ███████████

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that **GMAC MORTGAGE, LLC** hereinafter **Assignor** the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by **OCWEN LOAN SERVICING LLC,** **Assignee,** the receipt whereof is acknowledged, has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by **ROBERT W. CAMPBELL and EMILY P. CAMPBELL to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS A NOMINEE FOR GMAC MORTGAGE CORPORATION DBA DITECH.COM, ITS SUCCESSORS AND ASSIGNS,** bearing the date **09/21/2005,** in the amount of **$155,000.00,** said Mortgage being recorded on **11/10/2005** in the County of **BUCKS,** Commonwealth of Pennsylvania, in **Book 4706, Page 1275.**

Being Known as Premises. **853 HILTON AVENUE, FEASTERVILLE TREVOSE, PENNSYLVANIA 19053**
Municipality: LOWER SOUTHAMPTON TOWNSHIP
Parcel No·   ███████████

Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever;

IN WITNESS WHEREOF, the said **Assignor** has caused these presents to be duly executed this 14 day of _____ March _____ , 2013 .

GMAC MORTGAGE, LLC

By _____
Name: Katelyn McCauley
Title: Authorized Officer

State of Pennsylvania            .

County of Montgomery       .

On this 14 day of _____ March _____ , 20 13 , before me. the subscriber, personally appeared Katelyn McCauley _____, who acknowledged him/herself to be the _____ Authorized Officer _____ for GMAC MORTGAGE, LLC, and that he/she, as such _____ Authorized Officer _____, being authorized to do so, executed the foregoing instrument for the purposes therein contained

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS J. CUNNINGHAM, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 1, 2016

Stamp/Seal:

_____ Thomas J. Cunningham
Notary Public MARCH 14 2013

The precise address of the within named
Assignee is.
1100 VIRGINIA DRIVE, P O  BOX 8300
FORT WASHINGTON, PA 19034
By _____
Katelyn McCauley 3/13/13

~~After recording return to:~~
Phelan Hallinan, LLP
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103

PHS #  ████████

Inst. # 2013034813 - Page 4 of 4

ALL THAT PARCEL of land in the township of Lower Southampton, Bucks county, commonwealth of Pennsylvania, as more fully described in deed book 3455, page 2387, ID# ███████, being known and designated as a metes and bounds property.

DEED from Gary Baumeister and Lisa Baumeister, married as set forth in deed book 3455, page 2387 dated 05/23/2003 and recorded 07/21/2003, Bucks county records, commonwealth of Pennsylvania.

## *BUCKS COUNTY RECORDER OF DEEDS*

**55 East Court Street**
**Doylestown, Pennsylvania   18901**
**(215) 348-6209**

**Instrument Number - 2015037139**
**Recorded On 6/26/2015 At 8:36:24 AM**               * Total Pages - 4
* **Instrument Type - MORTGAGE ASSIGNMENT**
**Invoice Number - 733283**           User -  KGB
* **Mortgagor - OCWEN LOAN SERV L L C**
* **Mortgagee - GREEN TREE SERV L L C**
* **Customer - INDECOMM**
* <u>**FEES**</u>

```
RECORDING FEES        $66.00
TOTAL PAID            $66.00
```

Bucks County UPI Certification
On June 26, 2015 By SEC

This is a certification page

# DO NOT DETACH

This page is now part
of this legal document.

<u>**RETURN DOCUMENT TO:**</u>
**INDECOMM**
**2925 COUNTRY DRIVE**
**LITTLE CANADA, MN 55117**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

**\* - Information denoted by an asterisk may change during**
**the verification process and may not be reflected on this page.**

Prepared By:
Harish Thimaraju
1260 Energy Lane
ST Paul, MN 55108

When Recorded Return To:
Indecomm Global Services
1260 Energy Lane
St. Paul, MN 55108

PIN: ▓▓▓▓▓▓



```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
21-032-038-          -          L SOUTHAMP TWP
        CERTIFIED 06/26/2015 BY SEC
```

# Assignment of Mortgage

Dated: **June 23, 2015**

For value received **Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409,** the undersigned hereby grants, assigns and transfers to **Green Tree Servicing LLC, 7360 South Kyrene Rd, T314, Tempe, AZ 85283,** all beneficial interest under a certain Mortgage dated **September 21, 2005** executed by **ROBERT W. CAMPBELL AND EMILY P. CAMPBELL, MARRIED** and recorded in Book **4706** on Page(s) **1275** as Document Number **2005147901** on November 10, 2005 **in the office of the County Recorder of Bucks County, Pennsylvania.**

MORTGAGE AMOUNT: **$155,000.00**

**\*\*See Attached Exhibit A for Legal Description**

MUNICIPALITY: **Lower Southampton Township**

PROPERTY ADDRESS: **853 Hilton Avenue, Feasterville, PA 19053**

**Certificate of Residence**

I, **Cali Paneng Xiong** , do hereby certify that the precise address of the within-named Assignee is **7360 South Kyrene Rd, T314, Tempe, AZ 85283** .

Dated: **June 23, 2015**

*Cali Paneng Xiong*

Cali Paneng Xiong, Agent of Assignee

Inst. # 2015037139 - Page 3 of 4

Ocwen Loan Servicing, LLC

By: _____

**Cali Paneng Xiong,**
**Assistant Secretary**

STATE OF **Minnesota**                    )

COUNTY   **Ramsey**                        ) SS

On **June 23, 2015** before me, **Richard J Carlson** , **Notary Public** in and for said State personally
appeared **Cali Paneng Xiong** , **Assistant Secretary** of **Ocwen Loan Servicing, LLC**, personally
known to me to be the person whose name is subscribed to the within instrument and acknowledged to
me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the
instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my
hand and official seal.

_____

**Richard J Carlson, Notary Public**
My Commission expires: **January 31, 2018**

**RICHARD J. CARLSON**
Notary Public-Minnesota
My Commission Expires Jan 31, 2018

Inst. # 2015037139 - Page 4 of 4

# Exhibit A Legal Description

ALL THAT PARCEL OF LAND IN THE TOWNSHIP OF LOWER SOUTHAMPTON, BUCKS COUNTY,
COMMONWEALTH OF PENNSYLVANIA, AS MORE FULLY DESCRIBED IN DEED BOOK 3455,
PAGE 2387, ID# ████████ BEING KNOWN AND DESIGNATED AS A METES AND BOUNDS
PROPERTY DEED FROM GARY BAUMEISTER AND LISA BAUMEISTER, MARRIED AS SET FORTH
IN DEED BOOK 3455, PAGE 2387 DATED 05/23/2003 AND RECORDED 07/21/2003, BUCKS
COUNTY RECORDS, COMMONWEALTH OF PENNSYLVANIA

### BUCKS COUNTY RECORDER OF DEEDS
**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

**Instrument Number - 2019063605**
**Recorded On 11/7/2019 At 12:32:38 PM**          * Total Pages - 4
* Instrument Type - MORTGAGE ASSIGNMENT
**Invoice Number - 1038834          User -  SMC**
* Mortgagor - DITECH FINANCIAL  LLC
* Mortgagee - NEWREZ LLC
* Customer - FIRST AMERICAN MORTGAGE SOLUTIONS - CFS
* <u>FEES</u>
**RECORDING FEES          $75.75**
**TOTAL PAID              $75.75**

> Bucks County UPI Certification
> On November 7, 2019 By TF

> This is a certification page
>
> # DO NOT DETACH
>
> This page is now part
> of this legal document.

**RETURN DOCUMENT TO:**
**FIRST AMERICAN MORTGAGE SOLUTIONS - CFS**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



**Robin M. Robinson**
**Recorder of Deeds**

**\* - Information denoted by an asterisk may change during**
**the verification process and may not be reflected on this page.**

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
21-032-038-        -         L SOUTHAMP TWP
          CERTIFIED 11/07/2019 BY TF
```

PARCEL No.▮▮▮▮▮▮▮
## PENNSYLVANIA
COUNTY OF **BUCKS**
LOAN NO.: ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. 208-528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **DITECH FINANCIAL, LLC** located at **2100 E. ELLIOTT RD., BLDG. 94, T310, TEMPE, AZ 85284**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING** located at **55 BEATTIE PLACE, SUITE 110, MS#01, GREENVILLE, SC 29601**, Assignee, its successors and assigns, that certain Mortgage dated **SEPTEMBER 21, 2005** executed by **ROBERT W. CAMPBELL AND EMILY P. CAMPBELL, MARRIED**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR GMAC MORTGAGE CORPORATION DBA DITECH.COM, ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, in the amount of **$155,000.00** and recorded on **NOVEMBER 10, 2005** in the Office of the Register, Recorder, or County Clerk of **BUCKS** County, State of **PENNSYLVANIA**, in Book 4706 at Page 1275 as Document No. 2005147901, more particularly described and commonly known as:

**AS DESCRIBED IN SAID MORTGAGE**
Property Address: **853 HILTON AVE, FEASTERVILLE, PA 19053**
**TOWNSHIP OF LOWER SOUTHAMPTON**

**SEE ATTACHED ASSIGNMENT HISTORY**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on ___11│1│19___.

**DITECH FINANCIAL, LLC, BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT**

_____
**CATRINA GLADDEN-EDIMO, MANAGER**

**Page 1 of 3**

STATE OF **TEXAS**          COUNTY OF **HARRIS**   ) ss.

On 11/1/19 _____, before me, ___Lauren Vereen___, personally appeared **CATRINA GLADDEN-EDIMO** known to me to be the **MANAGER** of **DITECH FINANCIAL, LLC, BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____ **(COMMISSION EXP.**

_____
NOTARY PUBLIC

LAUREN VEREEN
Notary Public, State of Texas
Comm. Expires 09-26-2022
Notary ID 131738681

I do hereby certify that the precise address of the Assignee Residence is:
**NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, 55 BEATTIE PLACE, SUITE 110, MS#01, GREENVILLE, SC 29601**

_____
**CATRINA GLADDEN-EDIMO, MANAGER**

**Page 2 of 3**

ASSIGNMENT HISTORY:

Assignment previously recorded from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** to **GMAC MORTGAGE, LLC** recorded on **JULY 12, 2012** as Document No. **2012056780**.

And from **GMAC MORTGAGE, LLC** to **OCWEN LOAN SERVICING LLC** recorded on **APRIL 26, 2013** as Document No. **2013034813**.

And from **OCWEN LOAN SERVICING LLC** to **GREEN TREE SERVICING LLC** recorded on **JUNE 26, 2015** as Document No. **2015037139**.

And from **DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC** to **NEW RESIDENTIAL MORTGAGE LLC** recorded on **AUGUST 28, 2017** as Document No. **2017051733**.

And from **NEW RESIDENTIAL MORTGAGE LLC** to **DITECH FINANCIAL LLC** recorded on **MARCH 12, 2018** as Document No. **2018012613**.

**Page 3 of 3**

## *BUCKS COUNTY RECORDER OF DEEDS*

**55 East Court Street**
**Doylestown, Pennsylvania   18901**
**(215) 348-6209**

**Instrument Number - 2022020191**
**Recorded On 3/24/2022 At 10:10:28 AM**          * Total Pages - 3
\* **Instrument Type - MORTGAGE ASSIGNMENT**
**Invoice Number - 1264688          User - KGB**
\* **Mortgagor - NEWREZ LLC**
\* **Mortgagee - US BANK TRUST NATIONAL ASSOCIATION**
\* **Customer - SIMPLIFILE LC E-RECORDING**
\* **FEES**

| | |
|---|---|
| **RECORDING FEES** | **$73.75** |
| **TOTAL PAID** | **$73.75** |

| Bucks County UPI Certification |
|---|
| On March 23, 2022 By TF |

| |
|---|
| This is a certification page |
| **DO NOT DETACH** |
| This page is now part of this legal document. |

**RETURN DOCUMENT TO:**
**MERIDIAN ASSET SERVICES - API**
**3201 34TH ST S STE 310**
**ST PETERSBURG, FL 33711**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

*Daniel J. McPhillips*

**Daniel J. McPhillips**
**Recorder of Deeds**

**\* - Information denoted by an asterisk may change during**
**the verification process and may not be reflected on this page.**

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
21-032-038-        -        L SOUTHAMP TWP
        CERTIFIED 03/23/2022 BY TF
```

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

**UPI#** ███████

Loan No: ██████

Space above for Recorder's use ██████████

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING**, whose address is **4000 CHEMICAL ROAD SUITE 200, PLYMOUTH MEETING, PA 19462**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, whose address is **888 SEVENTH AVENUE 10TH FLOOR, NEW YORK, NY 10019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **9/21/2005**
Original Loan Amount: **$155,000.00**
Executed by (Borrower(s)): **ROBERT W. CAMPBELL & EMILY P. CAMPBELL**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR GMAC MORTGAGE CORPORATION DBA DITECH.COM, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book/Liber/Volume 4706, Page **1275**
Document/Instrument No: **2005147901** in the Recording District of **Bucks**, PA, Recorded on **11/10/2005**.
**MUNICIPALITY: TOWNSHIP OF SOUTHAMPTON**

Property more commonly described as: **853 HILTON AVENUE, FEASTERVILLE, PENNSYLVANIA 19053-3508**



IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____**FEB 2 8 2022**_____

**NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

By: **CYNTHIA M FLOYD**                    Witness Name: ~~Tiffany Lee Klimkowski~~
Title: **SENIOR MANAGER**

I hereby certify the precise address of the within named **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST** (*Assignee*) *is* **888 SEVENTH AVENUE 10TH FLOOR, NEW YORK, NY 10019**.

_____

| |
|---|
| A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT |

State of _**SC**_
County of _**Greenville**_

On _**FEB 2 8 2022**_____, before me, **Jennifer Smith**, a Notary Public, personally appeared **CYNTHIA M FLOYD, SENIOR MANAGER** of/for **NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of _**SC**_ that the foregoing paragraph is true and correct.  I further certify CYNTHIA M FLOYD, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____

(Notary Name): **Jennifer Smith**
My commission expires: _____

| |
|---|
| **JENNIFER SMITH** |
| Notary Public, State of South Carolina |
| My Commission Expires 08/10/2030 |